THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT
EARL MAYHEW, Defendant-Appellant.

(No. 11994;

Fourth District—April 4, 1974.

John F. McNichols, Deputy Defender, of Springfield (Bruce L. Herr, Legal Director, and Jim Collins, Assistant Appellate Defender, of counsel), for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Thomas L. Knight, Assistant State's Attorney, and John Howard, Senior Law Student, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his convictions at a bench trial upon charges of robbery, battery and tampering with a motor vehicle (Ill. Rev. Stat. 1971, ch. 38, pars. 18—1 and 12—3, and ch. 95½, par. 4—102(b) respectively). A sentence of 3 to 9 years was imposed for robbery, but no sentence was imposed on the other offenses for the reason that the trial court construed these charges to arise "out of the same offense".

■■ In a criminal proceeding a judgment consists of an adjudication of guilt together with the sentence imposed. (Ill. Rev. Stat. 1971, ch. 38, par. 102—14; now Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—1—12.) As to those offenses upon which no sentence was imposed, there is no final judgment for purposes of appeal and the issues argued as to such offenses are not properly subject to review.

Upon appeal it is contended that defendant was denied due process because the identification at trial followed an unnecessarily suggestive pre-trial photograph identification; that the evidence was insufficient to prove guilt beyond a reasonable doubt; that the court erred in permitting defendant to withdraw his motion for a competency hearing without an evidentiary hearing, and that defendant should not be adjudged guilty of three offenses founded on the same conduct.

The robbery victim, McNamara, parked his Volkswagon bus in a parking lot adjacent to a principal street. It does not appear to be contested that the parking lot and street were well-lighted. As he left a telephone booth on the parking lot at about 11:30 P.M. he observed two men approaching from the side of the bus, and as he returned to it the men came from the rear of the bus and one seized him from behind with a neck lock. The victim was forced toward the front of the bus to the ground and was struck in the eye and kicked in the forehead. He then

noticed a third man with the first two. His coat was pulled over his head and his car keys taken, together with $14. He was picked up and shoved into the bus and made to slide across the front bench seat during which time he pulled the coat down and observed the man behind the steering wheel. The latter could not fit the key into the switch. While the coat was pulled back from his head, the man directed McNamara to put the key into the switch and he again pulled the coat down and observed the man's front and profile. In an effort to escape, the victim pulled the coat down and when the man grabbed him by the neck from behind he sprayed a can of mace over his shoulder, pulled free and ran into the street. A motorist took him to the police station where McNamara gave a description of the appearance of the head and shoulders of the man. He examined some 60 police photographs of individuals but made no identification. Two officers drove McNamara back to his vehicle where various articles, including a draft card, a Social Security card and other personal documents were found on the front seat. McNamara did not examine the documents which were taken by the police. He returned with the officers to police headquarters where he was shown a photograph and immediately identified defendant. Although the documents carried defendant's name, McNamara was not specifically advised of that fact. Following such identification, defendant was taken in charge on an interstate highway at about 2:30 A.M.

Defendant's motion to suppress the identification was heard and denied. He argues that the single-photo identification was so suggestive and prejudicial as to bring about a substantial likelihood of misidentification, and that there was a denial of due process as the identification was made from a suggestive source.

Defendant would have this court adopt an exclusionary rule founded upon a balancing of the suggestiveness of the identification procedure against the degree of necessity in following a particular procedure in evidence. He cites *United States v. Washington*, 292 F.Supp. 284.

In *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375, the Supreme Court determined that "unnecessary suggestiveness alone" does not require the exclusion of identification testimony. At issue there was a "show-up" some 7 months after the offense with which defendant was charged.

We note that the United States Supreme Court has refused to adopt a rule of per se exclusion in *United States v. Wade*, 388 U.S. 218, 18 L.E.2d 1149, 87 S.Ct. 1926, and *Gilbert v. California*, 388 U.S. 263, 18 L.Ed.2d 1178, 87 S.Ct. 1951. In each case defendant was in custody and had counsel, but was placed in a lineup without counsel or a waiver of counsel's presence in violation of the defendant's sixth amendment

rights. In each case, there was a remandment to afford the prosecution an opportunity to establish that the identification at trial had a source independent of the line-up identification. *Wade* reversed the judgment of the court of appeals, which had remanded for a new trial with exclusion of the courtroom identification.

■■ The denial of due process arises where there is a very substantial likelihood of irreparable misidentification. (*Simmons v. United States,* 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967.) The test of due process is whether under the "totality of circumstances" the identification made in court was reliable even if the confrontation or pre-trial procedure was suggestive in a greater or lesser degree. *Neil v. Biggers,* 409 U.S. 188, 199, 34 L.E.2d 401, 411, 93 S.Ct. 375.

Here the record on the motion to suppress permits an evaluation of the factors pertinent to ascertaining the independent original of the identification at trial. McNamara had an opportunity to view the defendant face to face during the episode with the key and during the struggle to escape. His description of facial pock marks and hair was particularly consistent with the face to face encounter. The evidence raises no doubt of ample lighting from the lights of the street and the parking lot. In *Coleman v. Alabama,* 399 U.S. 1, 26 L.Ed.2d 387, 90 S.Ct. 1999, the identification originated in the victim's view of defendant in the lights of an approaching automobile. In *Neil v. Biggers,* the identification originated in the victim's view of defendant in light from an adjacent hall and from moonlight. The witness's identification of defendant from the photograph was made within an hour of the robbery, and he had refused to make an identification from a substantial number of photographs initially shown to him.

Defendant would have us conclude that the use of the photograph to identify defendant prior to the time of his arrest was so suggestive as to deny due process under the holding of *Foster v. California,* 394 U.S. 440, 22 L.Ed.2d 402, 89 S.Ct. 1127. The facts vary substantially. In *Foster,* the victim could not identify defendant either in a line up or a subsequent show-up confrontation. At a subsequent line up, where defendant was the only person included in all three confrontations, the victim did identify defendant. It was concluded that under these circumstances the "police repeatedly said to the witness, 'This is the man'" so that the reliability of the identification at trial was undermined. Here, defendant was not in custody and there was a substantial exigency in the necessity of a prompt apprehension of the offender. In *Simmons v. United States,* 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967, it is said that the pre-arrest use of photographs will not be prohibited if there is a need for a quick apprehension and the exoneration of innocent suspects.

■■ We conclude that under the standards of *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed.2d 401, 93 S.G. 375, and *United States v. Wade,* 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.G. 1926, there is ample evidence supporting the conclusion that McNamara's identification had its origin independently from the showing of the single photograph. The facts are readily distinguishable from *People v. Blumenshine,* 42 Ill.2d 508, 250 N.E.2d 152, where the evidence raised doubt as to the adequacy of the light and the opportunity to observe. The record suggests an urgency to apprehend rather than a design to influence McNamara. (*People v. Martin,* 47 Ill.2d 331, 265 N.E.2d 685, and *Davis v. United States,* 425 F.2d 673.) This record shows that the identification was substantially independent of a photograph shown. *People v. Pagan,* 52 Ill.2d 525, 288 N.E.2d 102.

■■ Defendant asserts that he was not proven guilty beyond a reasonable doubt. He testified to a purported alibi in recounting a course of driving around the city, with others not clearly identified, for purposes of eating here and there. There was no corroborating testimony as to these acts. He testified that he had loaned the several personal documents to an individual so that the latter might buy beer. This was not corroborated. The evidence is that a test of the mace shows that it exhibited a green color under ultra violet light. After his arrest, defendant's face and upper clothing were so tested and exhibited such characteristic color on a substantial scale. No explanation of such phenomenon was undertaken.

It is further contended that defendant was not identified as being present at the time of the robbery and the assault and prior to the time that McNamara was placed in the Volkswagen bus and had an opportunity to observe defendant. This hypothesis would require both the jury and this court to ignore the evidence that the transaction was one continuous series of events within a short span of time, that some one took McNamara's keys in the robbery but that defendant succeeded to the keys and initiated the action to require McNamara to put them into the ignition. Defendant cites *People v. Adams,* 8 Ill.App.3d 62, 289 N.E.2d 53. That case, however, concerns individuals charged and convicted through accountability.

Defendant urges that the court erred in permitting the withdrawal of a petition to determine competency without evidentiary hearing. The said petition was not filed until after the trial, conviction and denial of post-motions. The psychiatric report filed said that defendant was sane and competent, and concluded that defendant was simulating mental disorder to escape sentence. After the filing of such report, defendant, through counsel, moved to withdraw the petition. The court admonished

defendant carefully and the record shows an understanding waiver of his right to a hearing.

■■ Defendant cites *People v. Maynard*, 347 Ill. 422, 179 N.E. 833, and *People v. Reeves*, 412 Ill. 555, 107 N.E.2d 861. In each case defendant had been adjudicated insane and there had been no adjudication of restoration. To the same effect are *People v. De Simone*, 28 Ill.2d 72, 190 N.E.2d 831 and *People v. McLain*, 37 Ill.2d 173, 226 N.E.2d 21. But where no conduct raises a bona fide doubt of sanity, the psychiatric report shows defendant sane and he moves for or acquiesces in the withdrawal of the petition, there is no abuse of discretion where the court fails to hold a hearing sua sponte. *People v. Hicks*, 35 Ill.2d 390, 220 N.E.2d 461; *People v. Baker*, 26 Ill.2d 484, 187 N.E.2d 227 and *People v. McElroy*, 125 Ill.App.2d 237, 260 N.E.2d 410.

The trial court concluded that the offenses of battery and tampering were not independently motivated or otherwise separable from the robbery under the rule of *People v. Whittington*, 46 Ill.2d 405, 265 N.E.2d 679, and accordingly imposed sentence only upon the conviction for robbery. While such offenses are not final judgments for perfection of appeal, Supreme Court Rule 366 gives this court authority to vacate the incomplete judgments. *People v. Lilly*, 56 Ill.2d 493, —— N.E.2d ——.

The conviction upon the indictment for robbery is affirmed. The convictions for battery and tampering are reversed and the judgments of the circuit court thereon are vacated.

Affirmed in part, reversed and vacated in part.

SMITH, P. J., and CRAVEN, J., concur.